UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLOSURE SYSTEMS INTERNATIONAL INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-03944-JMS-MJD |
| ) | |
| NOVEMBAL USA INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION TO BIFURCATE AND STAY**

This matter is before the Court on Plaintiff's Motion to Bifurcate Trial of Novembal's Infringement Counterclaim and Stay Related Contentions. [Dkt. 42.] For the reasons set forth below, the motion is **DENIED**.

## I.  BACKGROUND

Plaintiff, Closure Systems International Inc. ("CSI") alleges in its Complaint, [Dkt. 1], that in January 2011, CSI employees Arnold Benecke, Bill Moll, and John Edie developed a closure for a plastic bottle (what the layperson would refer to as the "lid" or "cap") (hereinafter referred to as the "CSI Closure") in response to a request from its customer, Nestle Waters ("Nestle"). In June 2011, Nestle conducted trials of a different closure proposed by CSI and other closures proposed by competing manufacturers. The trials were witnessed by the various manufacturers, including CSI and Defendant Novembal USA Inc. ("Novembal"), who saw each other's proposed closures, including samples of the CSI Closure that CSI had provided to Nestle. Nestle ultimately decided to use a closure offered by Novembal rather than the CSI Closure.

In 2018, Nestle approached CSI about replacing Novembal as its closure supplier. Nestle began trials of a closure designed by CSI (hereinafter referred to as the "New CSI Closure") that

was similar to, but not identical to, the CSI Closure. In May 2019, Novembal informed Nestle and CSI that it believed that the New CSI Closure infringed on a design patent owned by Novembal (the "'442 patent").

CSI asserts that Novembal stole the CSI Closure design and improperly claimed inventorship of it in the '442 patent and another design patent, the '171 patent. CSI seeks to have the named inventors changed in both patents from the Novembal employees currently listed as inventors to CSI employees Benecke, Moll, and Edie. This would have the effect of making CSI the owner of the patents.

Novembal has moved to dismiss the Complaint and also has filed a counterclaim in which it alleges that CSI is infringing the '442 patent by manufacturing and selling closures with substantially the same design as that claimed in the patent.

## II. DISCUSSION

The relief sought by CSI in the instant motion is two-fold. First, CSI asks that the trial of this case be bifurcated. CSI argues that its claims should be tried to the Court first, because inventorship of the patents is a legal issue to be resolved by the Court. A jury trial on the counterclaim would then be necessary only if CSI were unsuccessful on its claims. Assuming that this relief is granted, CSI also asks for a stay of various deadlines. Specifically, CSI asks that it not be required to provide any noninfringement, invalidity, or unenforceability contentions—which it will likely assert as defenses to Novembal's counterclaim—until thirty days after the resolution of its claim regarding the inventorship of the patents.

### A. Request for Stay of Deadlines Relating to Various Contentions

As an initial matter, the Court notes that CSI's stay request is a request to modify the case management plan deadlines in this case, which may be done only for "good cause." Fed. R. Civ.

P. 16(b)(4). CSI's argument that it could not have been expected to seek the relief it now seeks until Novembal filed its counterclaim ignores the fact that the parties expressly anticipated Novembal's infringement counterclaim when they agreed upon their proposed case management plan and included deadlines for infringement and invalidity contentions in the proposed plan. *See* [Dkt. 20 at 2] ("Novembal accordingly intends to file at least one counterclaim in this case for patent infringement against CSI."). The fact that Novembal has now filed the counterclaim that the parties expected it to file when they agreed on the schedule is not good cause for modifying that schedule.

The crux of CSI's stay argument is that any claim that it makes that the '442 patent is invalid or unenforceable, or that its closure does not infringe it, will impair or nullify the value of the patent—an asset that it claims to be the rightful owner of. Therefore, CSI argues, it should not be required to make any such arguments unless and until the Court determines that CSI does not, in fact, own the patent.

CSI's stay argument fails on several levels. First, it is based on the faulty premise that, assuming CSI is the rightful owner of the '442 patent, demonstrating that the patent is invalid or unenforceable would impair a property right held by CSI. However, there is no right to enforce an invalid or otherwise unenforceable patent, which is the "right" CSI seeks to preserve. Thus, while CSI argues that forcing it to challenge the validity of the '442 patent would deny it "the economic benefits or productive use" of it, in fact, an invalid patent by definition has no productive use and should provide the holder no economic benefit. *Cf.* [Dkt. 43 at 23] (CSI recognizing that "enforcing a patent that a party knows to be invalid (which would potentially be the claim made by a party against whom CSI enforces its patents if the circumstance of concern here plays out) opens a party to liability for various business torts such as unfair competition,

3

interference with business relations or even antitrust liability"). Similarly, there is no right to enforce a patent more broadly than its proper construction would permit, so CSI's argument that it should not be required to impair the patent's value by "taking a position that necessarily narrows the scope of the patent" in its noninfringement contentions is similarly unavailing. CSI is simply incorrect when it argues that it has a due process right in enforcing the '442 patent in a way that is contrary to law.

    Second, while CSI argues that—again, assuming that it is found to own the '442 patent—any assertion it makes in this case that the patent is invalid or otherwise unenforceable could be used against it in a future suit, it does not articulate how that would occur. CSI argues in its initial brief that its "pleadings" and "contentions" in this case would be discoverable in a future case in which it sought to enforce its rights in the '442 patent, but it does not articulate how those pleadings and contentions could be used against it in the hypothetical future suit. [Dkt. 43 at 22-24.] It argues in its reply brief that "were CSI to take the position that the patents in suit were invalid because of prior art (*i.e.*, the designs were not new under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103), that invalidity *cannot be corrected.* That allegation sticks with the patents, and more importantly, sticks with CSI as a potential judicial admission." [Dkt. 54 at 9.] But "a statement made in one lawsuit cannot be a judicial admission in another." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996). And while such a statement "can be *evidence* in the other lawsuit," it must be an admission of fact; a "legal conclusion" rather than "the admission of a fact" is not evidence. *Id.* (emphasis in original); *see also Ruehl v. AM Gen. LLC*, 2020 WL 1472133, at *29 (N.D. Ind. Mar. 25, 2020) ("Therefore, the statement in AM General's counterclaim cannot constitute a judicial admission because it is not a fact but is a legal conclusion."); *S. Clay Prod., Inc. v. United Catalysts, Inc.*, 2001 WL 812359, at *15 (S.D.

Tex. Feb. 2, 2001), *rev'd in part, vacated in part,* 43 F. App'x 379 (Fed. Cir. 2002) ("The statements relied upon by United expresses nothing more than an opinion based on facts not yet established *i.e.,* that Southern Clay's '842 patent may be invalid. Opinion statements based on assumptions will not support a finding of a judicial admission.") (citing *In re Coastal Plains, Inc.,* 179 F.3d 197, 206 (5th Cir. 1999)).

Presumably CSI is not arguing that it has a right to change its **factual** assertions to suit its interests; rather, the Court understands CSI to argue that it may wish to take different positions regarding the proper application of the law to the facts. The Federal Rules of Civil Procedure expressly permit it to do so in its pleadings, Fed. R. Civ. P. 8(e)(2) ("A party may also state as many separate claims or defenses as he has regardless of consistency"), and CSI cites to no authority for the proposition that by doing so it would place itself in legal jeopardy.[1]

Finally, CSI's argument is based on the premise that Novembal would suffer no prejudice from the stay CSI proposes that could not be remedied by an award of damages. This argument fails to account for the prejudice that is inherent in what will likely be a very significant delay in resolving Novembal's counterclaim. Indeed, other than proposing that its own noninfringement and invalidity contentions be due thirty days after its ownership claim is decided, CSI has failed to propose an alternative schedule or articulate how long of a delay would actually result if its motion were granted. CSI also fails to acknowledge that, in the event CSI is not successful on its ownership claim, its proposal would require two rounds of discovery, expert reports, and

---

[1] Unlike judicial admissions, judicial estoppel may prohibit a party from taking inconsistent legal positions. However, judicial estoppel applies only when a party has **successfully** asserted a legal position. *CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661, 662-63 (7th Cir. 2019) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). It does not apply when the legal position in question was simply asserted, but not adopted by the court.

dispositive motions. This would not only increase the cost of the litigation to Novembal, but would also increase the burden on the Court. *See* Fed. R. Civ. P. 1 (requiring courts to apply the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Therefore, CSI's assertion that its proposed stay would serve only to avoid prejudice to CSI without causing any prejudice is not well taken. *See* Fed. R. Civ. P. 1 (requiring courts to apply the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding").

For all of the reasons set forth above, the Court **DENIES** CSI's requested stay.

### B. Bifurcation of the Trial

CSI also asks that the trial of this case be bifurcated. CSI argues that its claims should be tried to the Court first, because inventorship of the patents is a legal issue to be resolved by the Court. A jury trial on the counterclaim would then be necessary only if CSI were unsuccessful on its claims. This approach would shorten the jury trial and avoid potential juror confusion by eliminating the presentation of evidence relevant only to the inventorship issue to the jury, and would not require a lengthy delay of the resolution of Novembal's counterclaim should CSI be unsuccessful on its claim. Thus, the suggestion is not unreasonable, and it is certainly possible that this approach might ultimately be adopted by Chief Judge Magnus-Stinson. However, inasmuch as the trial in this case is not anticipated until August 2021, it is premature to make that determination at this time. Any motion to bifurcate the trial of this case shall be filed within thirty days after any motions for summary judgment are fully briefed, after counsel meet and confer and attempt to reach agreement on the issue. This will allow the decision regarding how to proceed with the trial of this case to be made with far more information about the scope of the trial than is now available.

### III.  Novembal's Request for Fees

In its response brief, Novembal asks the Court to exercise its inherent power to award it attorney fees and costs for responding to what it characterizes as a baseless motion.  That request is **DENIED**.  While the Court disagrees with CSI's arguments regarding its stay request, the Court does not find the request "baseless," and certainly disagrees with Novembal's suggestion that the motion was filed merely to harass Novembal.  *See* [Dkt. 51 at 9] (noting that a fee award is "proper where, for example, a party 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'") (quoting *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996)).

### IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Bifurcate Trial of Novembal's Infringement Counterclaim and Stay Related Contentions, [Dkt. 42], is **DENIED**.  However, the request to bifurcate the trial may be renewed at a later date.  **Any motion to bifurcate the trial of this case shall be filed within thirty days after any motions for summary judgment filed in this matter are fully briefed, after counsel meet and confer and attempt to reach agreement on the issue.**  Defendant's request for an award of fees and costs related to the instant motion is **DENIED**.

SO ORDERED.

Dated:  13 MAY 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.